U.S.
DIST.

DEC 29   1 49 PM '93

B. ......... TY

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

MIKE M. NDEFRU,

          Plaintiff,

    Vs.                        Case No. 93-4127-SAC

Dr. PETER M. A. SHERWOOD,
Dr. DALE M. HAWLEY,
Dr. KENNETH J. KLABUNDE,
Dr. MICHAEL J. O'SHEA,
Dean TIMOTHY R. DONOGHUE,
Dean BRADLEY FENWICK,
Dean ELIZABETH A. UNGER,

          Defendants.

MEMORANDUM AND ORDER

On June 7, 1993, the plaintiff, Mike M. Ndefru,
filed a 253-page complaint alleging claims under 42 U.S.C.
§ 1983. Ndefru, in substantial detail, claims that the
defendants have deprived him of due process in the
rejection of his propositional oral examination theme in
Chemistry at Kansas State University (KSU). Ndefru
contends that this action ultimately resulted in his
dismissal from KSU. Ndefru also claims that Dr. Sherwood
unlawfully searched his belongings. Ndefru claims that
this search of his belongings violated his rights as
guaranteed by the Fourth Amendment and Fourteenth
Amendments. Ndefru claims total damages in the amount of

$5,612,000.

This case comes before the court upon the defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The defendants argue that the plaintiff has not been deprived of a liberty or property interest. The defendants also argue that even if the plaintiff was deprived of a liberty or property interest, the plaintiff has plead insufficient facts to indicate that they acted arbitrarily, capriciously or in bad faith in depriving the plaintiff of such an interest. The defendants argue that plaintiff's Fourth Amendment claims must fail as Dr. Sherwood's actions did not deprive the plaintiff of his right to be free from unreasonable searches and seizures by the government. The defendants also contend that they are entitled to qualified immunity.

Ndefru has filed a 29-page response to the defendants' motion to dismiss. In that response, Ndefru challenges the defendants' factual summation of his complaint. Ndefru argues that the defendants cannot redraft his complaint so as to ignore the specific facts alleged. Ndefru contends that it is clear that his claims should survive the defendants' motion to dismiss.

The court, having carefully considered the briefs of the parties, the plaintiff's voluminous complaint, and the applicable law, is now prepared to rule.

2

## Standards for Granting a Motion to Dismiss

In considering a motion for dismissal under Fed.

R. Civ. P. 12(b)(6), the court must

> accept all factual allegations of the complaint
> as true, and draw all reasonable inferences in
> favor of the plaintiff." *Zilkha Energy Co. v. Leighton*,
> 920 F.2d 1520, 1523 (10th Cir. 1990). Dismissal
> of a case pursuant to Fed. R. Civ. P. 12(b)(6)
> requires the legal determination that the
> plaintiff can prove no set of facts in support of
> his claim to entitle him to relief. (citations
> omitted).

*Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752, 753 (10th

Cir. 1991); *see Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472

(10th Cir. 1990).

In analyzing the plaintiff's complaint, the court

has taken into consideration the fact that he appears pro

se. "A pro se litigant's pleadings are to be construed

liberally and held to a less stringent standard than formal

pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991). "At the same time, we do not

believe it is the proper function of the district court to

assume the role of advocate for the pro se litigant." *Id.*

*See Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

1991) ("Despite liberal construction afforded pro se

pleadings, the court will not construct arguments or

theories for the plaintiff in the absence of any discussion

of those issues.").

3

## Overview[1]

Ndefru, apparently not a United States citizen, is studying in the United States on a student visa.  While at Eastern Kentucky University, Ndefru earned a bachelors degree in Chemistry, a bachelors degree in Biology, a masters degree in Chemistry, and a masters degree in Biology.  Ndefru apparently had very good grades while at Eastern Kentucky University.  Following his studies at Eastern Kentucky University, Ndefru was admitted to four universities to pursue a Ph.D. degree in Chemistry.  Ndefru chose KSU.

During the events relevant to this case, Ndefru was a graduate student in the Chemistry Department at KSU. Ndefru was a member of a research group composed of

---

[1]  The court notes that the plaintiff's complaint is neither short nor plain as required by Fed. R. Civ. P. 8. The plaintiff's complaint is often redundant and is extremely difficult to follow.  Nevertheless, the court has attempted to distill the essential aspects of the plaintiff's complaint into an accurate, albeit truncated, summation of the alleged facts.  By summarizing the basic facts alleged in the plaintiff's complaint, the court has simply endeavored to reduce the operative facts to a manageable level.  The court has carefully scrutinized the plaintiff's complaint.  In considering the plaintiff's response to each of the defendants' arguments, the court has also carefully considered the arguments advanced by the plaintiff, as well as the portions of his complaint as referenced in his response to the defendants' motion.

In short, while the court has considered all of the arguments of the parties and has scrupulously reviewed the plaintiff's complaint in its entirety, this memorandum and order will not attempt to repeat in full the substance of the arguments of the parties, nor will the court endeavor to discuss in exacting detail all 253 pages of the plaintiff's complaint.

4

graduate students in the Chemistry Department.   The head of the group was Dr. Peter Sherwood, who was also Ndefru's major research advisor.

Ndefru's proposed topic for his propositional oral examination dealt with the analysis of chlorinated hydrocarbons using a gas sensor.   Although Ndefru believed his proposed oral examination theme to be superior to the topics proposed by other students, the supervisory committee rejected the plaintiff's propositional oral examination theme.   Instead, the committee attempted to persuade Ndefru to work on an alternative proposal, the "Surface Science" proposal.   Ndefru claims that the supervisory committee's proposals were inferior to his proposed topic.[2]   Ndefru's complaint states that "[t]he committee wanted, through the Surface Science project, the plaintiff to milk a rock."   Ndefru claims that the committee members, each of which were closely tied to Dr. Sherwood for financial and other reasons, rejected Ndefru's proposal primarily because Dr. Sherwood was actively opposed to it.

Ndefru complains that KSU and the Chemistry Department policies and regulations were not followed in

_____

[2]   The committee essentially indicated that the value of Ndefru's proposal was "minimal" as vastly superior technology to conduct the same analysis which the gas sensor would perform had already existed for thirty years. Ndefru contends that the gas sensor can provide analysis superior to analysis of available instruments at a fraction of the cost.

5

rejecting his proposal. Ndefru also complains that he was
not provided access to copies of the other student's
proposals.

At some point, Dr. Sherwood removed Ndefru from
the Surface Science research group. Ndefru filed a formal
complaint with the Graduate School and the Chemistry
Department.

On June 18, 1992, Ndefru was informed that a
grievance hearing was scheduled for June 22, 1992.
Ndefru's request for additional time to prepare was denied.
Ndefru claims that allowing him only "one-working-day's"
notice violated his grievance rights. In addition,
Ndefru's request for copies of the other student's
proposals which had been approved was denied. The rules
governing the grievance committee did not allow for cross-
examination of the witnesses by Ndefru. Ndefru complains
that certain witnesses were unavailable to appear at the
grievance hearing. Ndefru also contends that members of
the grievance committee either lacked the requisite skills
and knowledge necessary to evaluate his proposal or that
they were biased against him.

The grievance committee ultimately concluded that
the Chemistry Department and Dr. Sherwood had treated
Ndefru fairly and found against Ndefru on all of the issues
he had raised. The grievance committee report, which
Ndefru claims was untimely prepared, was reviewed and

6

approved by Dean Donoghue, Dean of the Graduate School. Although Dean Donoghue indicated that KSU would arrange for Ndefru to become a member of another research group, Ndefru apparently rejected that offer.  Because that Surface Science group was the only Surface Science Group at KSU, Ndefru claims that his dismissal from the group essentially had the effect of dismissing him from KSU.  Ndefru basically claims that these acts have destroyed his professional reputation.

Ndefru also claims that on May 9, 1992, Dr. Sherwood was going through his belongings which were in an area shared by Ndefru and another student which served as an office for the two students.  Ndefru's "office" area was apparently located in Dr. Sherwood's research laboratory. Dr. Sherwood was apparently looking for papers concerning nickel which he had previously loaned to Ndefru.  Dr. Sherwood was looking through a pile of papers on Ndefru's desk when Ndefru entered the room.  Ndefru objected to Dr. Sherwood's search for the papers, and now claims this search by Dr. Sherwood violated his constitutional rights.

## 42 U.S.C. § 1983

42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

7

party injured in an action at law, suit in
equity, or other proper proceeding for redress.

Section 1983 does not create any substantive rights. *Dixon
v. City of Lawton, Okl.*, 898 F.2d 1443, 1447 (10th Cir. 1990). A
§ 1983 claims generally describes a substantive violation
of a right secured by the Constitution or law. *Id.*

Under 42 U.S.C. § 1983, the plaintiff must
establish (1) that the actions complained of were done by a
person acting under color of state law, and (2) that these
actions deprived the plaintiffs of rights, privileges or
immunities secured by the Constitution or laws of the
United States. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d
1550, 1556 (10th Cir. 1993); *Greco v. Guss*, 775 F.2d 161, 164
(7th Cir. 1985); *See Dixon*, 898 F.2d at 1447. Whether a
person is subject to a § 1983 suit turns upon the ultimate
question of whether the alleged infringement of federal
rights is fairly attributable to the state. *Rendell-Baker v.
Kohn*, 457 U.S. 830, 838 (1982); *Tarabishi v. McAlester Regional Hosp.*,
827 F.2d 648, 651 (10th Cir. 1987).

## Due Process

"The protection of procedural due process is not
available until the plaintiff establishes the existence of
a recognized property or liberty interest." *Southeast Kansas.
Comm. Action Program, Inc. v. Lyng*, 758 F. Supp. 1430, 1432 (D. Kan.
1991) (citing *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d
1384, 1394 (10th Cir. 1988)), *aff'd*, 967 F.2d 1452 (10th

8

Cir. 1992). "The range of interests protected by procedural due process is not infinite." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961). The Supreme Court has held that academic decisions and judgments about a student, as opposed to disciplinary decisions, are entitled to deference by the courts. *See Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985); *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78 (1978) ("Courts are particularly ill-equipped to evaluate academic performance."); *Harris v. Blake*, 798 F.2d 419, 423 (10th Cir. 1986) ("The Supreme Court has emphasized that less stringent procedural requirements attach when a school makes an academic judgment about a student than when it takes disciplinary action."), *cert. denied*, 479 U.S. 1033 (1987).

In *Horowitz*, a medical student challenged her dismissal by the University of Missouri-Kansas City Medical School. The student argued that the medical school had not provided her with procedural due process prior to her dismissal. The Supreme Court disagreed and held that the student had received procedural due process as she had received notice of her impending dismissal and that the

9

decision to dismiss her was careful and deliberate. 435
U.S. at 85.

## Property Interest

"To have a property interest in a benefit, a
person clearly must have more than an abstract need or
desire for it. He must have more than a unilateral
expectation of it. He must, instead, have legitimate claim
of entitlement to it." *Id.* 408 U.S. at 577. "The hallmark
of property, the Court has emphasized, is an individual
entitlement grounded in state law, which cannot be removed
except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,
430 (1982).

## Liberty Interest

In *Southeast Kansas Comm. Action Program*, this court
summarized the law concerning a cause of action based upon
a deprivation of a liberty interest:

> Notwithstanding the absence of a property
> interest, a procedural due process hearing may
> still be necessary if a liberty interest is
> implicated. *Rich v. Secretary of the Army*, 735 F.2d 1220,
> 1226 (10th Cir. 1984). In *Paul v. Davis*, 424 U.S.
> 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), the
> Supreme Court considered the issue of whether the
> plaintiff who was allegedly defamed by a flier
> circulated by the police department bearing his
> name and photograph which supposedly depicting
> "active shoplifters" stated a claim for relief
> under 42 U.S.C. § 1983 and the Fourteenth
> Amendment. The Court concluded that injury alone
> to reputation does not violate the liberty or
> property interests of the due process clause.
> The Court stated that there is "no constitutional
> doctrine converting every defamation by a public
> official into a deprivation of liberty within the
> meaning of the Due Process Clause of the Fifth or

10

Fourteenth Amendment." *Id.* at 702. The proper
remedy for such an injury is through a state tort
action for defamation. *Id.* at 697-699. In *Paul*,
the Court concluded that the plaintiff had
suffered no constitutional injury because he
could not "assert denial of any right vouchsafed
to him by the State and thereby protected under
the Fourteenth Amendment." *Id.* at 712.

Thus, in order to present a viable liberty
deprivation claim, the plaintiff must demonstrate
more than a mere injury to reputation; due
process requirements are not triggered unless the
injury to reputation is entangled with the loss
of a more tangible interest. *See Setliff*, 850 F.2d
at 1396. The plaintiff is also required to
demonstrate that the publication of information
was false and stigmatizing. *See Derstein v. State of Kan.*,
915 F.2d 1410 (10th Cir. 1990); *Conaway v. Smith*, 853
F.2d 789, 794 (10th Cir. 1988); *Sipes v. United States*,
744 F.2d 1418, 1421 (10th Cir. 1984).

. . .

A statement is not stigmatizing if it merely
alleges incompetence, negligence, low
productivity and dereliction. *See Sullivan v. Stark*,
808 F.2d 737, 739 (10th Cir. 1987). In order for
a statement to be stigmatizing, a statement must
allege dishonesty, stealing or some other
allegation that gives rise to a 'badge of
infamy,' public scorn, or the like. *See Wells v. Hico
Independent School Dist.*, 736 F.2d 243, 256 n. 16 (5th
Cir. 1984); *Bailey v. Kirk*, 777 F.2d 567, 580, n. 18
(10th Cir. 1985).

758 F. Supp. at 1433-1434; *see Jensen*, 998 F.2d at 1558-1559.

## Analysis

### Due Process Claim

As the defendants suggest, Ndefru has failed to
demonstrate that he has been deprived of a liberty or
property interest. Essentially, the plaintiff's case boils
down to whether a university student has a property or

11

liberty interest in having a proposed oral topic approved by his teachers and academic advisors. Simply put, Ndefru does not have a property or liberty interest in having his proposed topic on a gas sensor approved, irrespective of the fact that he may regard his proposed topic to be superior to topics approved for other students, and irrespective of his self-appraisal of the relative merits of his topical proposal and his academic advisors' recommended or required course of study. The plaintiff's disappointed expectations of researching a preferred topic are not a basis of any cognizable liberty or property interest. Nor does the fact that Ndefru's subsequent efforts to overrule the decision of his academic advisors regarding his topical proposal were unsuccessful implicate a liberty or property interest.[3] In short, the plaintiff's complaint does not allege a sufficient factual basis to demonstrate that the defendants' actions have deprived him

---

[3] Ndefru's complaint on several occasions challenges the defendants' adherence to the applicable rules and regulations in considering his proposed topical area and in addressing his subsequent grievance. The court simply notes that the defendants' failure to rigidly adhere to the University's rules and regulations would not, in and of itself, serve as a basis for a § 1983 claim. *See Newman v. Burgin*, 930 F.2d 955, 960 (1st Cir. 1991) ("The Due Process Clause of the Constitution . . . does not require the University to follow any specific set of detailed procedures as long as the procedures the University actually follows are basically fair ones. . .").

of any liberty or property interest.[4]

Ndefru's claim that he has been deprived of
liberty interests in his good name and reputation and his
ability to pursue a career in chemistry fails for at least
two reasons. First, there is no allegation that any of the
unfavorable information about Ndefru has been disseminated
to the public; the intra-university dissemination of this
information cannot serve as basis for this claim. *Harris*,
798 F.2d at 422-23 n. 2. Second, from the allegations
found in Ndefru's complaint and the arguments made in his
response to the defendants' motion, it does not appear that
the defendants' actions and statements concerning his
competency are stigmatizing. Moreover, "[d]amage to
prospective employment opportunities is too intangible to
constitute deprivation of a liberty interest." *Jensen*, 998
F.2d at 1559.

In sum, Ndefru's due process claims are dismissed
for failure to state a claim upon which relief may be
granted.

### Fourth Amendment Claim

The Fourth Amendment to the United States

---

[4] The plaintiff makes the blanket assertion that the
defendants' actions ultimately lead to his dismissal from
KSU. While such allegations might implicate a property or
liberty interest, that allegation is not factually
supported by a fair reading of the entire complaint. In
fact, it appears that once the grievance committee's
decision was reached, Ndefru was encouraged to find a new
major professor to complete his studies at K.S.U.

13

Constitution protects a person's right to be secure from unreasonable searches and seizures. *United States v. Walsh*, 791 F.2d 811, 814 (10th Cir. 1986). The Fourth Amendment to the Constitution is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961). "The protections of the fourth amendment, however, apply only to governmental action; a search or seizure, even if unreasonable, performed by a private person not acting as a government agent or in concert with a government official is not within the scope of the fourth amendment." *Walsh*, 791 F.2d at 814 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "The test for determining whether one is acting as a government agent is whether 1) the government knew of and acquiesced in the intrusive conduct; and 2) the party performing the search intended to assist law enforcement efforts or further his own ends." *United States v. Lowe*, 999 F.2d 448, 450 n.4 (10th Cir. 1993) (citing *Pleasant v. Lovell*, 876 F.2d 787, 797 (10th Cir. 1989)).

Assuming, *arguendo*, that Ndefru had a reasonable expectation of privacy in the pile of papers which Dr. Sherwood searched, and assuming, *arguendo*, that Dr. Sherwood's search was unreasonable under the circumstances, Ndefru has failed to allege sufficient facts to demonstrate that Dr. Sherwood was acting as a government agent at the time he searched for the "nickel" papers. Therefore,

14

Ndefru's Fourth Amendment claims necessarily fail.

        IT IS THEREFORE ORDERED that the defendants'

motion to dismiss (Dk. 12) is granted.

        Dated this _29th_ day of December, 1993, Topeka,

Kansas.

                                    _____
                                    Sam A. Crow, U.S. District Judge

15